# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2013

## STATE OF TENNESSEE v. HOYTE MITCHELL HOBBS

**Appeal from the Circuit Court for Warren County**
**No. 13597      Larry B. Stanley, Judge**

_____

**No. M2012-02537-CCA-R3-CD - Filed August 14, 2013**

_____

The defendant, Hoyte Mitchell Hobbs, appeals from his Warren County Circuit Court guilty-pleaded conviction of attempted second degree murder, claiming that the trial court erred by imposing a fully incarcerative sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

L. Scott Grissom, Assistant District Public Defender, for the appellant, Hoyte Mitchell Hobbs.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Randal Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, originally charged with attempted first degree murder and two counts of aggravated assault, entered a best interests guilty plea to one count of attempted second degree murder in exchange for a Range I sentence of eight to 10 years, with the precise length and manner of service of the sentence to be determined by the trial court. At the guilty plea submission hearing, the prosecutor summarized the factual basis for the plea:

> Had this matter gone to trial, the State's proof would be on
> October 19, 2011, the victim was attacked by the defendant
> while he lay on a couch and was stabbed numerous times by the

defendant with a knife. The victim did survive. The State's proof would include a phone call made by the defendant to 9-1-1 essentially confessing the crime admitting that he attempted to kill the victim who is Bryan Dedman.

At the sentencing hearing, the victim testified that as he lay sleeping on the couch, the defendant, who had moved into the residence a few weeks before, stabbed him repeatedly. He said that the defendant continued to stab him even after he got up from the couch and tried to escape through the front door. As the victim struggled with the deadbolt on the door, the defendant stabbed him "three more times in the back," and those wounds punctured the victim's lung, broke three of his ribs, and broke "a little piece off [his] rotator cu[ff]." The victim testified that he spent six weeks in the intensive care unit recovering from the seven stab wounds he received during the attack. The victim said that he did not believe that the 300 days that the defendant had served in jail was a sufficient amount of incarceration.

Magnolia Solomon testified that she had lived next door to the defendant since 1985 and that the defendant was a good neighbor.

Patsy Hobbs, the defendant's wife of more than 30 years, testified that the defendant had moved out of the marital residence and into the residence where the victim lived because the defendant was irritated by her smoking. She said that she had tried to quit but could not. Ms. Hobbs said that the defendant had served in the Army National Guard for some time and had been declared 100 percent disabled by the Veteran's Administration. Ms. Hobbs testified that she trusted the defendant "faithfully" and that she wanted him to return to their home. She said that she had quit smoking in anticipation of his return.

During cross-examination, Ms. Hobbs denied that the defendant had moved out because of a domestic dispute. She acknowledged that she had called the police to report that he had struck her in the face but claimed that he did not actually strike her. She labeled the incident "a silly accident."

Howard David Hobbs, the defendant's brother, testified that the defendant had joined the Army "when it was closing Vietnam out" and that he was later discharged. The defendant then joined the National Guard and served for more than 12 years until he became disabled. Mr. Hobbs explained that the defendant received a head injury "in the summer camp in Savannah." He said that the defendant "had a seizure while he was laying on the top bunk and fell out on the concrete on his head and split his head." Mr. Hobbs testified that the injury altered the defendant's personality. He said that he and his wife were willing to let the defendant live with them should he be placed on probation.

During cross-examination, Mr. Hobbs acknowledged that the defendant received an other than honorable discharge from the Army in the 1970s due to some type of misconduct. He clarified that the defendant was not dishonorably discharged.

The presentence report, which was exhibited to the hearing, established that the defendant had one prior conviction of reckless endangerment and that he had successfully completed a probationary term of 11 months and 29 days following that conviction.

In arriving at the nine year sentence, the trial court found that the defendant had treated the victim with exceptional cruelty during the commission of the offense and that the injuries inflicted upon the victim were particularly great. In imposing a fully incarcerative sentence, the trial court noted the "bizarre violent" nature of the defendant's act and observed, "I'm not sure what kind of rehabilitation can be done for someone that would engage in this type of behavior out of the blue." The court expressed doubt about the defendant's ability to abide by the terms of probation and concluded that it was "in the interest of our community and our society to protect it from violent criminal outbursts like the one that happened in this case." The trial court also found that "confinement is particularly suited, very much so, to provide a deterrent to others who would likely commit similar offenses." Noting again that the defendant's was "a very heinous offense, very disturbing," the trial court denied all forms of alternative sentencing and ordered the defendant to serve his sentence in the Department of Correction.

In this appeal, the defendant challenges the imposition of a fully incarcerative sentence.

"[A]lthough the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.*

Despite the new standard of review, trial courts must still consider the principles of sentencing enumerated in Code section 40-35-210(b), *see Bise*, 380 S.W.3d at 698 n.33 (citing T.C.A. § 40-35-210(b)), 706 n.41, and must, as required by statute, consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised

Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* at 706 n.41 (citing T.C.A. § 40-35-210(e)).

The supreme court expanded the holding in *Bise* to the trial court's decision regarding alternative sentencing and probation eligibility in *State v. Caudle*, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Here, the trial court denied alternative sentencing based upon the need to avoid depreciating the nature of the "very heinous, . . . very disturbing" offense and that confinement was particularly suited to work as a deterrent. *See* T.C.A. § 40-35-103(1)(B). The record fully supports the trial court's finding that confinement was necessary to avoid depreciating the seriousness of the offense. The defendant mounted a vicious and unprovoked attack on the unarmed victim as he lay sleeping on the couch. The defendant continued to stab the victim even as he tried to escape. Under these circumstances, the trial court did not abuse its discretion by ordering a fully incarcerative sentence.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE